J. Riley Thompson v. Commissioner.
Thompson v. Commissioner
Docket No. 5898-64.
United States Tax Court
T.C. Memo 1967-252; 1967 Tax Ct. Memo LEXIS 9; 26 T.C.M. (CCH) 1298; T.C.M. (RIA) 67252; December 21, 1967
*9 John T. Carlon, Jr., for the petitioner. * W. Reeder Glass, for the respondent. RAUM
determined deficiencies in petitioner's income tax of $4,192.80 for 1960 and $516 for 1961. The issues raised in this proceeding are whether amounts taken as deductions by petitioner in 1960 and 1961 for alleged business expenses, charitable contributions, taxes, and interest, disallowed in toto by the Commissioner, were in fact expended by petitioner for those purposes, and whether petitioner actually sustained a bad debt loss in 1960 as claimed in his return for that year. Findings of Fact Some of the facts have been stipulated and, as stipulated, are incorporated herein by this reference along with accompanying exhibits. Petitioner is an unmarried individual who, at the time of filing his petition with this Court, resided in Fort Lauderdale, Florida. During 1960 and 1961, however, petitioner lived with his father in River Edge, New Jersey, and filed his Federal income tax returns with the district director of internal revenue at Newark, New Jersey. Petitioner was employed as an *10 account executive by Warwick & Legler, Inc., an advertising agency located in New York City, throughout 1960 and until January 24, 1961, when he left because of ill health. Petitioner was responsible for one account, a product known as Mennen Skin Bracer, and his territory was basically New York City. Petitioner had no proprietary interest in Warwick & Legler, Inc. He received compensation from Warwick & Legler, Inc., in the amounts of $22,999.98 and $3,494.22 in 1960 and 1961, respectively. The stock in Warwick & Legler, Inc., was owned by two persons, Warwick and Legler. They were basically responsible for the principal clients served by the agency, and their contacts were the principal factor in bringing in new business. Petitioner's position in relation to Messrs. Warwick and Legler was a comparatively minor one. There was a total staff of about 200 persons, including about 25 or 30 account executives. There was an account executive for each brand or product handled by the agency. Thus, in respect of the various Mennen products, petitioner was the account executive only for Mennen Skin Bracer, an aftershave lotion; he had no such responsibilities in respect of any other product *11 or client. The policy of Warwick & Legler, Inc., with respect to reimbursement of employees for business expenses was as follows: (a) Expenses incurred by officers, directors and account executives for traveling and living expenses while away from home and on the business of the agency or in entertaining clients of the agency constitute expenses of the agency and will be reimbursed by the agency when authorized. (b) Expenses incurred by officers, directors and account executives in servicing and entertaining clients and other management-approved business contacts and dues of management-approved organizations constitute expenses of the agency and will be reimbursed by the agency when authorized. In addition, the agency expects its executives and other personnel to use their cars, homes, clubs and other facilities to entertain clients, prospective clients and suppliers after normal business hours and outside of regular working days. Long practice in the advertising agency business has proved this to be a successful and advantageous method of aiding in the procuring of new business and of preserving cordial business relationships with present clients and people with whom they *12 do business. In fixing the compensation of our executives at the generous levels which we pay we expect that the executives will absorb such business expenses personally. In accordance with the foregoing policy petitioner was in fact reimbursed for all expenses paid by him in respect of his work on the Mennen Skin Bracer account as well as for any other expenses that he was specifically directed or authorized to incur. During 1960, petitioner was reimbursed by his employer for business expenses incurred in connection with his employment in the total amount of $2,995.23, which may be broken down into the following categories: A. Expense reports submitted monthly
$2,309.84
B. Car rentals
571.86
C. Air travel
113.63
On his income tax return for 1960, petitioner claimed deductions for the following alleged additional business expenses not reimbursed by his employer: Entertainment of Clients - Prospects & Contacts - (Payments thru Diner
Club, American Exp. & Other Restaurants)
$3,360.75
Gifts, Business Mailing, Xmas Expenses for Clients and Prospects
478.25
Out of Town Travel Expenses
457.00
Telephone & Telegrams
558.80
Use of Apartment for Conferences and Entertainment of Customers &
Prospects & as Office
1,902.30
Advertising Publications
175.00
Depreciation of Office Furniture
60.00
Taxis & Rental Cars
590.35
Accounting Fees
15.00
Total Expenses
$7,597.45
*13 Petitioner also claimed a $300 deduction for a "Bad Debt - Uncollectible from J. Rainer - established as uncollectible in 1960 - left country." During 1961, petitioner was reimbursed by Warwick & Legler, Inc., for business expenses incurred during January 1961 in connection with his employment in the total amount of $249.59. This figure may be broken down as follows: A. Expense report submitted for January
$173.03
B. Air Travel
76.56
Petitioner did not work at all during the remainder of 1961, although he did try to get some free-lance assignments during the latter part of the year, and expended sums for secretarial services, a telephone answering service, resumes, and an advertisement in a trade magazine towards that end. These sums were deducted by petitioner on his 1961 income tax return, along with alleged "expenses in connection with position as Advertising Sales Executive, not reimbursed by Employer", as follows: Entertainment of Clients, Prospects &
Contacts
$ 500
Business Stat'y, Mailing, Xmas Ex-
penses
100
Out of Town Travel Expenses
125
Telephone & Telegrams
240
Answering Service
180
Use of apartment for conferences &
entertainment of customers & pros-
pects, as office
900
Advertising Publications
100
Advertising
270
Taxis & Rental Cars
175
Secretarial Services
125
Resumes
110
Accounting Fee
20
$2,845
*14 Although petitioner's residence was in New Jersey during 1960 and 1961, he also maintained an apartment during those years in New York City, about five blocks from his office. He used the apartment at least three nights a week for sleeping or entertaining. Petitioner paid Charles H. Greenthal and Company, Inc., a rental of $2,040 for the apartment in both 1960 and 1961. In addition to the foregoing deductions, petitioner claimed the following deductions on his returns: 1960
1961
Contributions
$625.00
$ 50.00
Interest
220.00
100.00
Taxes
State income
$393.25
Local sales and ex-
cise
215.00
608.25
50.00
In his notice of deficiency, the Commissioner disallowed all of petitioner's itemized deductions for 1960, and allowed in lieu thereof the maximum standard deduction of $1,000. Similarly, all of petitioner's itemized deductions for 1961 were disallowed, and petitioner's tax liability for that year was recomputed by use of the applicable supplemental tax table based on one exemption. The parties have stipulated that petitioner has subsequently substantiated deductions for charitable contributions of $400 in 1960 and $50 in 1961; deductions *15 for interest of $99.20 in 1960 and $35.37 in 1961; and a deduction for state income taxes of $296.53 in 1960. Opinion RAUM, Judge: 1. Business expenses. Petitioner was an account executive in an advertising agency. His work was limited to that of a single client, and his employer reimbursed him for all expenses incurred in respect of that client, including travel and entertainment. Yet, in his 1960 return he claimed deduction of an aggregate of $7,597.45 business expenses not reimbursed by employer. The various components of this total are set forth in our findings. The burden is, of course, upon petitioner to establish not only that he in fact made the expenditures in question, but also that they were proximately related to his business of being an employee of the advertising agency. Cf. , affirmed (C.A. 9), certiorari denied . It is our conclusion that he has largely failed to carry that burden. While it is true that the record may furnish support for the position that some of the expenditures were made (notably the apartment rent and accounting fees), [1] the principal defect *16 in petitioner's evidence is his failure to furnish satisfying proof that such expenses were proximately related to his business. Petitioner was a witness in his own behalf, but we did not find his testimony convincing. He tended to make sweeping, slippery statements that appeared to us to be as unreliable as the returns themselves. Thus, one of the components of the alleged $7,597.45 unreimbursed business expenses was an item of $3,360.75 which was described in the return as "Entertainment of Clients - Prospects & Contacts - (Payments thru *17 Diner Club, American Exp. & Other Restaurants"). Yet, petitioner's work related to but one client, and his employer reimbursed him for all expenses incurred with respect to that client. In representing that the amount claimed as a deduction included entertainment of "clients", petitioner made a thoroughly misleading, if not false, statement of fact. In an effort to explain the expenses in question, he sought to portray himself at the hearing as the "sole new business man" for the agency, giving the impression that it was his duty, and his alone, to solicit new accounts for his employer. However, as the story unfolded, it appeared that the two dominant stockholders in the agency were the ones principally involved in bringing in new business and that petitioner's function in this connection was at most a comparatively minor one. We had but little confidence in petitioner's sweeping, nonspecific assertions that all of the expenditures in question were related to his work and were not largely personal in nature. Nevertheless, the record shows that the agency did encourage its employees to entertain prospective clients as an aid to procuring new business, and we think it quite likely *18 that some of the claimed expenses were so incurred. But every expenditure which might have some remote connection with possible new business does not automatically become transformed into a business expense. Thus, petitioner's traveling expense to serve as best man at a friend's wedding can hardly qualify as a business expense merely because petitioner had some hope that he might some day persuade the bride's father to become a client. These expenditures were plainly personal; they certainly were not proximately related to petitioner's business. Similarly, in view of the loose character of the evidence and our evaluation of petitioner's reliability as a witness, we think he has failed to establish that much of his so-called entertaining was proximately related to his business rather than personal in character. We need not dwell further upon this matter. Although we think that some minor portion of the claimed $7,597.45 represented unreimbursed business expenses actually made by petitioner, it is impossible on this record to make any mathematically accurate estimate thereof. Accordingly, doing the best we can with the materials before us, and following the rule in *19 (C.A. 2), we hereby find that petitioner in fact incurred unreimbursed deductible business expenses in 1960 in the aggregate amount of $700. The situation in respect of 1961 is somewhat different. Petitioner terminated his employment with the advertising agency in the latter part of January 1961, and he was reimbursed a total of $249.59 for expenses incurred during that month. The business expenses claimed by him on his 1961 return, in the aggregate amount of $2,845, are set forth in our findings. They include not only expenditures alleged to have been made during January 1961 but also other expenses for advertising and the like incurred towards the end of 1961 in connection with petitioner's attempts to obtain free-lance work. To the extent that petitioner actually paid such latter expenses in 1961 we think they are deductible. [2] But, as was the case for 1960, it is not possible to arrive at a mathematically accurate result, and, following Cohan, we hereby find that petitioner in fact incurred unreimbursed business expenses in January 1961 as well as other deductible business expenses thereafter in 1961 in the aggregate amount of $750. *20 2. Contributions. On his returns petitioner claimed deductions for charitable deductions in the amounts of $625 and $50 for 1960 and 1961, respectively. The Commissioner disallowed these in toto for lack of substantiation, but has conceded by stipulation herein that petitioner has substantiated $400 of the contributions claimed for 1960 and the $50 contribution for 1961. Petitioner has not proved that he is entitled to any charitable deduction in excess of these amounts. 3. Interest. Petitioner claimed interest deductions in the amounts of $220 and $100 on his 1960 and 1961 returns, respectively, which the Commissioner disallowed in full for lack of substantiation. By stipulation, the parties have agreed that petitioner paid interest to Bankers Trust Company at least in the aggregate amount of $99.20 for 1960 and $25.37 for 1961. Petitioner has failed to prove that he paid interest during either of these years in excess of the stipulated amounts. 4. Taxes. In his 1960 return petitioner claimed deductions in the aggregate amount of $608.25 for taxes, consisting of $393.25 state income tax and $215 local sales and excise taxes. The Commissioner disallowed these deductions in *21 full for lack of substantiation, but has since conceded by stipulation that petitioner has substantial payment of New York State income taxes in the amount of $296.53. Petitioner is entitled to deduct this amount but he has failed to show that he paid any state income taxes in excess thereof. As to the local sales and excise taxes, it was obviously not possible to furnish substantiation, but we think that the $215 deduction claimed was reasonable and should have been allowed for 1960. Similarly, the $50 deduction claimed for such taxes in 1961, which the Commissioner disallowed, is in our judgment allowable as a reasonable approximation of the amount actually paid for this purpose. 5. Bad Debt. The claimed deduction of $300 for an alleged bad debt loss in 1960 must be disallowed for failure of proof in two crucial respects, one, that there was in fact a bona fide debt, and two, that it became worthless in 1960. Petitioner's testimony was entirely too vague. All that really appears is that petitioner gave money to one J. Rainer to set up business contacts for him. There was no showing that any debt was created thereby, nor was there any showing of worthlessness in 1960 even if it *22 be assumed that a debt had been created. The disallowance of this deduction must be approved for failure of proof. Decision will be entered under Rule 50. Footnotes
*. John T. Carlon, Jr., withdrew as counsel after the trial prior to the filing of briefs.↩
1. As to the other components, we are by no means satisfied on this record that unreimbursed expenditures were in fact made in amounts equal to those claimed. It must be remembered that petitioner received reimbursement from his employer for certain expenses, and we are far from convinced that the expenditures shown to have been made did not include at least part of the reimbursed expenses. Also, the amounts shown to have been expended do not correlate with the amounts claimed. However, we are satisfied that substantial unreimbursed amounts were in fact expended, and this conclusion is reflected in the ultimate decision that we reach herein.↩
2. Since he was holding himself out to do free-lance work, advertising and like expenses incurred in connection therewith are different from the unallowable expenses relating to the investigation of a potential new trade or business. See , affirmed (C.A. 5).↩